IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>  v.<br><br>ALLEN CARTER | CRIMINAL ACTION<br>NO. 16-19 |

**Pappert, J.**                                                                                    November 21, 2025

<u>**MEMORANDUM**</u>

      Allen Carter is serving a 240-month sentence for a number of very serious and violent crimes, including drug dealing, armed robbery, firearm offenses and participating in an execution-style murder.  He seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A)—citing his chronic kidney disease.  The Court denies the motion because even if he could present extraordinary and compelling reasons for his release, Carter is a danger to the community and letting him out of jail would contravene the applicable sentencing factors.

I

      In 2016, federal prosecutors charged Carter with eight counts related to drug trafficking, firearms, robbery and murder.  (Information at 1–19, Dkt. No. 1.)  Carter pled guilty to all eight counts, but the Court later vacated two of them.  (Am. Judgment at 1–9, Dkt. No. 117.)  The advisory Sentencing Guidelines recommended a range of 210–262 months' imprisonment, (Presentence Investigation Report ¶ 149), and the Court imposed a sentence of 240 months, (Am. Judgment at 3).  Carter has served less than half of that sentence.  (Gov't's Resp. in Opp'n to Def.'s Mot. for Compassionate Release at 4, Dkt. No. 146.)

Before a federal inmate may request compassionate release, he must first ask his facility's warden to do so on his behalf. *United States v. Raia*, 954 F.3d 594, 595–97 (3d Cir. 2020). The inmate may seek release on his own behalf only if the warden denies the request or fails to respond after 30 days of receiving the request. *Id.*; *see also* 18 U.S.C. § 3582(c)(1)(A). The Government does not dispute that Carter has exhausted his administrative remedies.

## II

A district court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). But this general rule has exceptions, one of which is compassionate release. *Id.* § 3582(c)(1)–(2); *see also United States v. Rutherford*, 120 F.4th 360, 364 (3d Cir. 2024). A court may grant compassionate release by reducing a defendant's sentence only if (1) extraordinary and compelling reasons warrant a reduction, (2) a reduction is consistent with any applicable Sentencing Commission policy statements and (3) the applicable 18 U.S.C. § 3553(a) sentencing factors support relief. 18 U.S.C. § 3582(c)(1)(A); *Rutherford*, 120 F.4th at 364.

### 1

Section 3582(c)(1)(A) does not define "extraordinary and compelling reasons." *United States v. Andrews*, 12 F.4th 255, 260 (3d Cir. 2021). Congress delegated the task of defining this phrase to the Sentencing Commission. 28 U.S.C. § 994(t). Section 1B1.13 of the Sentencing Guidelines, effective on November 1, 2023, identified six categories of reasons that individually, or in combination, may be "extraordinary and compelling." One category is the defendant's "[m]edical [c]ircumstances." U.S. Sent'g Guidelines Manual § 1B1.13(b)(1) (U.S. Sent'g Comm'n 2025).

A defendant's medical circumstances may be extraordinary and compelling in four ways, three of which are relevant here. They include instances in which the defendant is: (1) "suffering from a terminal illness"; (2) "suffering from a serious physical or medical condition" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover"; and (3) "suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." *Id.*

Carter claims his stage 5 chronic kidney disease satisfies these standards. To begin, situations (2) and (3) do not help him. He offers no evidence to support that his disease substantially diminishes his ability to provide self-care. Self-care refers to an inmate's ability to "provide for his own activities of daily living, such as eating and drinking, toileting, washing and dressing, and mobilization." *United States v. Millhouse*, No. 06-285-1, 2025 WL 1285814, at *7 (E.D. Pa. May 2, 2025) (internal quotation marks and citation omitted). Carter's prison and medical records show that he plays flag football multiple times per week. Nor does Carter present any evidence to show he is not receiving necessary care. To the contrary, he has consistently received medical care. He undergoes frequent evaluations, sees a nephrologist and an advanced practitioner and receives required medications.

With respect to Carter's claim that he is suffering from a terminal illness, such an illness is defined in the Guidelines as a "serious and advanced illness with an end-of-life trajectory." U.S. Sent'g Guidelines Manual § 1B1.13(b)(1)(A). An "[e]xample" "include[s]" "end-stage organ disease." *Id.* Stage 5 chronic kidney disease qualifies as

Case 2:16-cr-00019-GJP   Document 147   Filed 11/21/25   Page 4 of 7

end-stage organ disease. It affects the kidneys—*organs* in the body responsible for, among other things, removing waste, maintaining blood pressure, and keeping bones healthy. It is a *disease*: it happens when the "kidneys have become damaged over time (for at least 3 months) and have a hard time doing all their important jobs." *Chronic Kidney Disease*, Nat'l Kidney Found. (Sept. 11, 2023), https://www.kidney.org/kidney-topics/chronic-kidney-disease-ckd. And finally, stage 5 chronic kidney disease is the *end-stage*. *Id.*

The Government suggests that Carter still must show that his kidney disease has an "end-of-life trajectory" to qualify as terminal. *Cf. United States v. Alexander*, No. 19-cr-40085, 2024 WL 4434165, at *4 (S.D. Ill. Oct. 7, 2024) (suggesting that even if an inmate has end-stage kidney disease, he must show that *in his case* his disease has an end-of-life trajectory). In support of its argument, the Government points out that Carter hasn't shown signs of uremia, and therefore, doesn't require dialysis. Other courts have suggested that an inmate's end-stage kidney disease does not qualify as terminal in certain situations, such as when he receives a kidney transplant. *E.g.*, *United States v. Hawkins*, No. 14-cr-00020, 2023 WL 4162279, at *4–5 (W.D. Va. June 23, 2023). The Court need not resolve whether Carter's condition constitutes a "terminal illness" because, for the reasons that follow, he is a danger to the community and the § 3553(a) sentencing factors strongly disfavor his release. *See United States v. Owens*, No. 20-cr-00026, 2024 WL 3582319, at *2 (E.D.N.C. July 30, 2024) (order) (declining to address a similar argument by the Government that an inmate's stage 5 chronic kidney disease did not qualify as terminal because the inmate was successfully undergoing treatment and didn't require dialysis yet).

4

2

Even if Carter could establish extraordinary and compelling reasons, compassionate release must also be consistent with the Sentencing Commission's policy statement. *Rutherford*, 120 F.4th at 364. The policy statement requires the Court to determine that Carter "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S. Sent'g Guidelines Manual § 1B1.13(a)(2). The factors under § 3142(g) are (1) "the nature and circumstances of the offense charged"; (2) "the weight of the evidence against the person"; (3) "the history and characteristics of the person"; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."

The nature and circumstances of Carter's offenses, and the weight of the evidence against him, mandate his continued incarceration. Carter was part of a conspiracy to distribute copious amounts of oxycodone. He and his co-conspirators traveled to Florida by plane, carrying $41,000 in cash, and bought oxycodone from a supplier. Then, he and one of his co-conspirators sold approximately 18,900 30-miligram pills, raking in $378,000 in proceeds. He also recruited someone to be a "straw" buyer of guns for one of his co-conspirators. And his drug trafficking went hand-in-hand with violent crime. Carter joined with his co-conspirators to rob a drug dealer and a gas station. And he was the get-away driver in the ambush and execution of a rival drug dealer—Carter waited in a nearby car, and after his partners in crime shot the victim thirteen times, he got them out of there. One of the individuals who committed this murder was the same person Carter previously helped illegally obtain firearms.

Carter's history and characteristics and rank dangerousness require his ongoing segregation from society. He has an extensive criminal record in the state and federal courts, to also include threatening individuals with a loaded pistol, burglary, illegal possession of a firearm and robbery. Any person who floods the streets with 18,900 oxycodone pills, helps a dangerous individual obtain firearms, acts as the get-away driver for a murder and commits numerous robberies and burglaries poses a significant threat to the public.

3

Finally, reducing Carter's 240-month sentence would contravene the § 3553(a) sentencing factors. *United States v. Pawlowski*, 967 F.3d 327, 330–31 (3d Cir. 2020).

Section 3553(a) directs a court to consider, among other things, the history and characteristics of the defendant, the nature and circumstances of the offense, and the need for the sentence to promote respect for the law, reflect the seriousness of the offense, provide just punishment, deter criminal conduct, protect the public from further crimes of the defendant, provide the defendant with needed medical care and avoid unwarranted sentencing disparities. 18 U.S.C. § 3553(a); *Pawlowski*, 967 F.3d at 329–30; *see also United States v. Hayes*, No. 25-1043, 2025 WL 1378756, at *1 (3d Cir. May 13, 2025) (per curiam). Carter's offenses and his criminal history argue strongly against his release. As explained above, Carter is a large-scale drug dealer and violent criminal.

Reducing Carter's sentence would contradict the need for that sentence to reflect the seriousness of his offenses, promote respect for the law and provide just punishment. Carter has served less than half of his well-earned 240-month sentence,

6

and letting him out earlier would not protect the public from further crimes he could commit. His prior state-court sentences did not slow him down and even while incarcerated for his crimes in this case, Carter has committed several disciplinary infractions. Nothing suggests he is unlikely to reoffend.

Lastly, denying Carter early release would not conflict with the need to provide him required medical care. Carter is receiving extensive monitoring and medical treatment for his kidney disease and continues to be well taken care of in the prison setting.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
Gerald J. Pappert, J.